# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BRENDA PENA QUINTANILLA,

    Plaintiff,

vs.                                              CIVIL NO. 09-00678 KBM/GBW

UNITED STATES OF AMERICA,

    Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE U.S. ATTORNEY'S CERTIFICATION (DOC. 12)

On July 14, 2009, the United States filed its Motion for Substitution of the United States of America as the Only Proper Party Defendant with Respect to Plaintiff's Common Law Tort Claims Against Defendant Andrew Mario Hernandez ("Substitution Motion") (Doc. 4). Attached as Exhibit 1 to the Substitution Motion was the Certification of United States Attorney Gregory J. Fouratt, as designee of the U.S. Attorney General. The United States Attorney certified that Andrew M. Hernandez was acting within the course and scope of his employment as an agent of the U.S. Border Patrol, U.S. Customs and Border Protection, U.S. Department of Homeland Security ("Border Patrol"), and was a federal employee at all times relevant to the allegations contained in Plaintiff's Complaint.

Plaintiff has filed a Motion to Strike the U.S. Attorney's Certification ("Motion to Strike"), asserting that Andrew M. Hernandez was not acting within the scope of his employment at the time of the incident in question. Plaintiff's Motion to Strike should be denied.

**ARGUMENT**

I. PLAINTIFF FAILED TO TIMELY FILE A RESPONSE

D.N.M.LR-Civ 7.4(a) requires that "[a] response must be served and filed within fourteen (14) calendar days after service of the motion." Plaintiff failed to respond to the Substitution Motion within the fourteen day time limit, or by July 31, 2009. On September 1, 2009, the Court granted the Substitution Motion (Order) (Doc. 11). On September 3, 2009, 51 days after the Certification was submitted to the Court and after the Court granted the Substitution Motion, Plaintiff filed her Motion to Strike (Doc. 12). Plaintiff's Motion to Strike should be denied because failing to "file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). Thus, by failing to respond to the United States' Substitution Motion within the time prescribed for doing so, Plaintiff consented to the granting of said motion. The Court reviewed all of the material before it prior to ruling and was fully aware at the time it granted the Substitution Motion that Plaintiff had not responded.[1] Consequently, based on Plaintiff having failed to respond to the Substitution Motion to which the Certificate was attached, and the Court having previously ruled on the Substitution Motion, Plaintiff's Motion to Strike should be denied.

---

[1] In making its determination, it is clear that the Court considered everything that had been filed with respect to the Motion to Substitute as evidenced by the following statement in the Order: "[a]fter consideration of the United States' Motion for Substitution *and the entire record in this matter*." (Emphasis added.) See, Doc. 11, first paragraph.

## II. A REVIEW OF THE CERTIFICATION BY THE COURT IS APPROPRIATE; REMAND TO STATE COURT IS NOT PERMITTED

The federal statute commonly known as the Westfall Act accords federal employees absolute immunity from tort claims arising out of acts undertaken in the course of their official duties, 28 U.S.C. § 2679(b)(1), and empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose."  28 U.S.C. 2679(d)(1), (2).  Upon such certification, the United States is substituted as defendant in place of the employee, and the action is thereafter governed by the Federal Tort Claims Act.  If the action commenced in state court, the Westfall Act calls for its removal to a federal district court, and renders the Attorney General's certification "conclusiv[e] . . . for purposes of removal."  28 U.S.C. § 2679(d)(2).

An Attorney General's Certification regarding scope of employment is reviewable by the Court for substitution purposes.  See, Gutierrea De Martinez v. Lamagno 515 U.S. 417, 432 (1995), where the Supreme Court held:

> Congress made the Attorney General's certificate conclusive solely for purposes of removal, and notably not for purposes of substitution.  It follows . . . that the scope-of-employment judgment determinative of substitution can and properly should be checked by the court . . . .

Just as the Government's certification that an employee "was acting within the scope of his employment" is subject to threshold judicial review, *Id.* at 434, so a complaint's charge of conduct outside the scope of employment, when contested, warrants immediate judicial investigation.  The United States and Andrew Hernandez are not required to accept the truth of plaintiff's allegations that he was on a frolic of his own.

3

Were it otherwise, a federal employee such as Andrew Hernandez would be stripped of suit immunity not by what the court finds, but by what the complaint alleges. Osborn v. Haley, 549 U.S. 226, 249-50 (2007).

Plaintiff's assertion that the Certification should be stricken based on her representation that Mr. Hernandez was operating outside the scope of his employment when he drove the U.S. Border Patrol pickup truck on September 30, 2006, *and* the case remanded to state court, is incorrect. In Osborn, 549 U.S. at 231, the plaintiff asserted a similar argument at the district court level – she opposed the substitution of the United States for the defendant because, she argued, the defendant acted outside the scope of his employment. The District Court overruled the Attorney General's certification and denied substitution resulting in the United States no longer being before the court. Declaring that it no longer had subject matter jurisdiction over the case, the court remanded the case to state court. The United States moved for reconsideration asserting that it disagreed with the plaintiff's factual allegations, but the district court denied the Government's motion to reconsider. *Id.* at 234-36. The Sixth Circuit vacated the District Court's order denying certification and substitution and vacated the order remanding the case to state court. *Id.* at 236-37.

> The Supreme Court affirmed the ruling of the Sixth Circuit and stated:
>
> Substitution of the United States is not improper simply because the Attorney General's certification rests on an understanding of the facts that differs from the plaintiff's allegations. The United States, we hold, must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment. On the jurisdictional issues, we hold that the Attorney General's certification is conclusive for purposes of removal, *i.e.*, once certification and removal are effected, exclusive competence to adjudicate the case resides in the

4

federal court, and that court may not remand the suit to the state court. *Id.* at 231. Orders denying Westfall Act certification and substitution are amenable to immediate review by the appropriate Court of Appeals. <u>Osborn</u> at 239, citing <u>Woodruff v. Covington</u>, 389 F.3d 117, 1124 (10th Cir. 2004).

In this case, the purpose of the Westfall Act is to relieve Andrew Hernandez from the cost and effort of defending the lawsuit brought by Plaintiff, and to place those burdens on the Government's shoulders. A determination of whether or not Andrew Hernandez was acting within the scope of his employment with the U. S. Border Patrol at the time of the accident should be decided at the earliest opportunity. <u>See</u>, <u>Anderson v. Creighton</u>, 483 U.S. 635, 646 (1987) ("[I]mmunity questions should be resolved at the earliest possible state of litigation."). However, no matter what conclusion this Court reaches concerning the scope of employment issue, the case may not be remanded to state court.

### III. <u>AGENT HERNANDEZ WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT</u>

#### A. <u>Plaintiff's Scope of Employment Assertion Is Contrived</u>

Plaintiff's basis for striking the Certification is her claim that Agent Hernandez was acting outside the scope of his employment with the Border Patrol at the time of the accident. In support of her Motion to Strike, Plaintiff attached her Affidavit (Exhibit 1) reasserting paragraphs 6-18 of her Complaint alleging that Andrew Hernandez contravened her direct orders, drove a Border Patrol pickup carelessly and recklessly and was "hot dogging" on September 30, 2006, when the accident occurred.

Despite the fact that Plaintiff now argues that Agent Hernandez was acting

5

outside the scope of his employment on September 30, 2006, the record is clear that she originally believed Agent Hernandez was acting *within* the scope of his employment at the time of the subject accident. On September 18, 2008, Plaintiff submitted an administrative tort claim (Claim for Damage, Injury or Death, Standard Form 95, "SF 95") to the U.S. Customs and Border Protection pursuant to 28 U.S.C. § 2401(b). See, Exhibit B attached to United States of America's Memorandum of Law in Support of its Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) or, in the Alternative, Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56 ("Memorandum") (Doc. 10). A claim under the Federal Tort Claims Act (FTCA) arises from a "negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment* . . . . (Emphasis added.) 28 U.S.C. § 1346(b).

Plaintiff's administrative claim (SF 95) asserted injuries sustained in a motor vehicle accident where Agent Hernandez was the driver of a Border Patrol pickup truck and Plaintiff was the passenger. Exhibit B to Memorandum. Further, Plaintiff's attorney submitted a cover letter with the administrative claim which informed the agency that the claim was based on an accident involving an employee of the Border Patrol, Andrew Mario Hernandez. *Id.* Notably, Plaintiff made no mention in the narrative attached to the SF 95 that Agent Hernandez contravened direct orders of his superior, began to intentionally and recklessly "hot dog" in his driving of the vehicle, was on a "frolic and detour outside the course and scope of his employment" or drove recklessly with the sole independent and personal motive of trying to impress Plaintiff. Complaint, ¶¶14-18, Affidavit, ¶¶ 10-14. Obviously, to have raised such allegations in her administrative claim would have taken her claim outside the scope of the FTCA. The only logical

6

conclusion which may be drawn from the cover letter and the SF 95 is that Plaintiff's claim was based on a negligent or wrongful act or omission of an employee of the United States, Andrew Hernandez, while he was acting within the scope of his employment.[2]

Plaintiff pursued an action against Agent Hernandez individually in New Mexico state court claiming that he was not acting within the scope of his employment, *only* after she was informed in a September 25, 2008 letter from the Assistant Chief Counsel for the U.S. Customs and Border Protection that she was precluded from pursuing her FTCA claims against the United States because she was a federal employee who suffered an injury during the course of her employment and was collecting workers' compensation benefits under the Federal Employees Compensation Act. See, Exhibit A to Memorandum, ¶¶ 6-7; Exhibit C to Memorandum. Plaintiff was informed the Federal Employees Compensation Act was her exclusive remedy for compensation for the injuries she sustained. *Id.* For Plaintiff to now allege that Agent Hernandez was acting outside the scope of his employment in light of her SF 95 is contrived, and in the worst case, disingenuous.

---

[2] One must assume Plaintiff and her attorneys truly believed that they had a legitimate claim under the FTCA; i.e., that Andrew Hernandez was acting within the scope of his employment, because the SF 95 pertaining to the accident was signed and submitted. Claimants are on notice from the language on the face of the SF 95 that there are civil and criminal penalties for presenting a fraudulent claim or making false statements. Exhibit B to Memorandum, Doc. No. 10.

### B. The Accident Occurred While Agent Hernandez Was Engaged In The Employer's Business Assigned To Him

In New Mexico, an employee's acts are within the scope of employment if the act "was something fairly and naturally incidental to the employer's business assigned to the employee," and the act "was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee." Cain v. Champion Window Co. of Albuquerque, 142 N.M. 209, 213, 164 P.3d 90, 94 (N.M. Ct. App. 2007) (citing UJI 13-407 NMRA). Scope of employment is generally an issue of fact that a court must resolve in each case in light of its particular facts. See Nabors v. Harwood Homes, Inc., 77 N.M. 406, 407-08, 423 P.2d 602, 603 (1967); Medina v. Fuller, 126 N.M. 460, 465, 971 P.2d 851, 856 (1998).

In evaluating whether an act was in the scope of employment, the New Mexico Court of Appeals has articulated a four-part test to determine scope of employment. Before a decision can be made on scope of employment, it must be determined "[whether] the action (1) is the kind the employee is employed to perform; (2) occurs during a period reasonably connected to the authorized employment period; (3) occurs in an area reasonably close to the authorized area, and (4) is actuated, at least in part, by a purpose to serve the employer." Narney v. Daniels, 846 P.2d 347, 355 (N.M. Ct. App. 1992).

"If in course of a business trip an employee makes a major deviation, major because of its duration in time or because of its nature, or both, it can be said that as a matter of law he as abandoned his employment." Carter v. Burn Constr. Co., Inc., 508

8

P.2d 1324, 1327 (N.M. Ct. App. 1973). See also Narney, 846 P.2d at 356 (employee was outside scope when auto accident was not reasonably close to authorized travel area); Massey v. Beacon Supply Co., 371 P.2d 798, 803 (N.M. 1962) (where employee's deviation is marked and unusual, he is not in scope of employment); Spradley v. United States, 119 F. Supp. 292, 293 (D.N.M. 1954) (employee outside scope who "actually turns away from master's business and changes the course of the vehicle [from its authorized course]").

A determination must be made as to whether the employee was on a frolic or a detour; the latter is a deviation that is sufficiently related to the employment to fall within its scope, while the former is the pursuit of the employee's personal business as a substantial deviation from or an abandonment of the employment. O'Shea v. Welch, 350 F.3d 1101 (10th Cir. 2003). If the employee wholly abandons, even temporarily, the employer's business for personal reasons, the act is not within the scope of employment, and the employer is not liable under respondeat superior for the employee's conduct during that lapse. A diversion from the strict performance of a task is not an abandonment of responsibility and service to an employer, unless the very character of the diversion severs the employment relationship. *Id.* at 1105.

On the morning of September 30, 2006, Andrew Hernandez was on-duty as a Border Patrol Agent Intern with the U. S. Customs and Border Protection ("Border Patrol"). He was on the day shift, assigned to Patrol West by the Ajkela Flats Area. Plaintiff Quintanilla was a senior Border Patrol Agent, and Agent Hernandez was assigned to ride with her in the Border Patrol pickup truck. They were looking for tracks in the desert that might indicate the presence of illegal aliens. Agent Hernandez was

9

driving pursuant to Plaintiff Quintanilla's instructions. Declaration of Andrew M. Hernandez, Exhibit D, attached hereto. In fact, Plaintiff has admitted that Agent Hernandez was driving the U.S. Border Patrol pickup on September 30, 2006 while acting within the scope of his employment based on her assertions in her Complaint and the testimony in her Affidavit. Complaint at 6-8, Plaintiff's Exhibit 1 to Motion to Strike at 3-5. Plaintiff admits that she had instructed Agent Hernandez to drive so he could "gain familiarity with the area while he was driving." *Id*.

A short time before 9:00 a.m., Plaintiff Quintanilla spotted a grayish-colored van in the distance traveling at a high rate of speed. She instructed Agent Hernandez to catch up to the vehicle and he increased his speed. After a turn onto a dirt road, the Border Patrol pickup truck began to fishtail and Plaintiff Quintanilla told Agent Hernandez to slow down. He did so, applying his brakes, only to lose control of the vehicle and it began to roll over. Exhibit D. Plaintiff Quintanilla was ejected from the vehicle.

Agent Hernandez was clearly within the scope of his employment at the time of the accident. The four-part test established by Narney has been met in this case. The first element has been satisfied because Agent Hernandez was performing a function for which he was employed – he was driving a Border Patrol pickup truck searching for illegal aliens crossing into the United States. Plaintiff, as the senior agent, had allowed Agent Hernandez to drive the Border Patrol pickup while they were on patrol to familiarize him with the area. On that day, Plaintiff had instructed Agent Hernandez to catch up to a van which had been observed in the area. Declaration of Ramiro Garcia, Special Operations Supervisor, United States Border Patrol, attached hereto as Exhibit

E; Exhibit D. The second element of Narney has been met because Plaintiff and Agent Hernandez were on duty at the time of the accident. Exhibit E. As for the third element set out in Narney, the accident occurred in an area reasonably close to the authorized area. Exhibit E. Plaintiff, herself, testified through her Affidavit that she had Agent Hernandez drive the Border Patrol pickup in order for him to familiarize himself with the area. She instructed Agent Hernandez to catch up to a van which had been observed in the area. The fourth Narney element has been met because Agent Hernandez was driving the pickup and was looking for possible illegal aliens – actions directed by his employer, the United States Customs and Border Protection. Exhibit E. The fact that she claims that Agent Hernandez drove a different direction down a road than she allegedly told him to does not alter the conclusion that he was performing within the scope of his employment as a Border Patrol Agent.

There is absolutely no evidence that Agent Hernandez deviated from the scope of his employment and was engaged in a frolic of his own. While Plaintiff alleges that Agent Hernandez began to drive carelessly and at an excessive rate of speed, (Affidavit of Brenda Quintanilla, ¶ 6, Exhibit 1 to Motion to Strike, Doc. No 12), that assertion does not establish that he was outside the scope of his employment. His actions did not demonstrate in any way that he was deviating from or abandoning his employment duties. Other than Plaintiff's unsupported statement, there is no evidence that Agent Hernandez was "hot dogging" or trying to impress Plaintiff, nor is there even a scintilla of evidence that Agent Hernandez was acting for personal reasons. Plaintiff's contention that Agent Hernandez contravened her orders, "as his superior," and turned east onto Leon Rd, rather than going south, alleges, at most, insubordination; but, does not

substantiate her claim that Agent Hernandez was on a frolic and detour.[3]  *Id.* ¶¶ 10 - 12. Even if he were negligent in the operation of the vehicle, which is denied, he would still be afforded the protection of the Westfall Act to shield him from suit.  Osborn, 549 U.S. at 248.  Under any analysis of the facts, there is absolutely no evidence that Agent Hernandez deviated from the scope of his employment with the Border Patrol.

**CONCLUSION**

Plaintiff's Motion to Strike should be denied.   She has propounded no evidence to support her accusations which are nothing more than self-serving statements to create the appearance of a cause of action in state court – particularly in light of the fact that she initially filed an administrative tort claim asserting that Agent Hernandez, as an employee of the United States, was negligent.  The evidence is overwhelming that Andrew Hernandez was acting within the scope of his employment with the Border Patrol on September 30, 2009.  The Certification by the United States Attorney General's designee must stand.

Respectfully submitted,

GREGORY J. FOURATT
United States Attorney

Filed Electronically September 24, 2009
JAN ELIZABETH MITCHELL
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274
jan.mitchell@usdoj.gov

---

[3]  A "detour" is a deviation that is sufficiently related to the employment to fall within its scope. O'shea, 350 F.3d at 1105.  If Agent Hernandez were on a detour at the time of the accident, as alleged by Plaintiff, he was still within the scope of his employment.

12

I HEREBY CERTIFY that on September 24, 2009, I filed the foregoing pleading electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Ian D. McKelvy, Attorney for Defendant, Email: idmckelvy@sbcw-law.com
Clay Paulos, Attorney for Defendant, Email: chpaulos@sbcw-law.com

      /s
JAN ELIZABETH MITCHELL
Assistant U.S. Attorney

N:\JMitchell\Quintanilla\response to motiont to strike.wpd